**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **CRIMINAL ACTION** |
| v. | ) | |
| | ) | **No. 12-20066-31-KHV** |
| JULIUS TYRONE SMITH, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

On March 31, 2014, the Court sentenced defendant to 180 months in prison and ten years of supervised release.   This matter is before the Court on defendant's pro se Motion For Sentence Reduction Under 18 U.S.C. § 3582(c)(1)(A) (Doc. #2290) filed November 20, 2020.   The Office of the Federal Public Defender has filed a supplemental memorandum.   See [Supplemental Memorandum In Support Of] Motion To Reduce Sentence Pursuant To 18 U.S.C. § 3582(c)(1)(A)(i) (Doc. #2298) filed January 7, 2021.   The government opposes defendant's motion.   See Government's Response To Defendant's Motion For Compassionate Release (Doc. #2300) filed January 21, 2021.   For reasons stated below, the Court sustains defendant's motion.

## Factual Background

Defendant currently is confined at MCFP Springfield, a Bureau of Prisons ("BOP") medical facility in Springfield, Missouri.   As of February 12, 2021, 409 inmates and 237 staff members at MCFP Springfield had tested positive for Coronavirus Disease-2019 ("COVID-19").   See COVID-19 Cases, https://www.bop.gov/coronavirus (last visited Feb. 15, 2021).   Eighteen inmates at the facility have died from COVID-19.   See id.   Some 390 of the remaining 391 inmates and all 237 staff members who tested positive have recovered.   See id.

Defendant states that because of obesity and pre-diabetes, he is at high risk of severe illness or death if he contracts COVID-19.   With good time credit, defendant's projected release date is August 24, 2025.   He asks the Court to release him with a condition of his original term of supervised release that he serve 48 months in home confinement.

## Analysis

A federal district court may modify a defendant's sentence only where Congress has expressly authorized it to do so.   See 18 U.S.C. § 3582(b)–(c); United States v. Blackwell, 81 F.3d 945, 947 (10th Cir. 1996).   Congress has set forth only three limited circumstances in which a court may modify a sentence: (1) upon motion of the BOP Director or defendant under Section 3582(c)(1)(A); (2) when "expressly permitted by statute or by Rule 35" of the Federal Rules of Criminal Procedure; and (3) when defendant has been sentenced "based on a sentencing range that has subsequently been lowered by the Sentencing Commission."   18 U.S.C. § 3582(c). Defendant seeks compassionate release under Section 3582(c)(1)(A) based on the COVID-19 pandemic.

Under the First Step Act of 2018, Pub. L. No. 115-391 (S. 756), 132 Stat. 5194, the Court may order compassionate release for "extraordinary and compelling reasons."   18 U.S.C. § 3582(c)(1)(A)(i).   The Court may entertain requests for compassionate release only upon a motion of the BOP, however, or of defendant after defendant "has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."   18 U.S.C. § 3582(c)(1)(A).

Here, the government concedes that defendant has satisfied the exhaustion prerequisite to

-2-

filing a motion for compassionate release.

Under the compassionate release statute, after considering the applicable factors set forth in Section 3553(a), the Court may grant relief if defendant establishes that (1) "extraordinary and compelling reasons" warrant a reduced sentence and (2) a reduced sentence is "consistent with applicable policy statements issued by the Sentencing Commission."   18 U.S.C. § 3582(c)(1)(A). Congress specifically authorized the Sentencing Commission to issue policy statements defining "what should be considered extraordinary and compelling reasons for [a] sentence reduction, including the criteria to be applied."   United States v. Saldana, 807 F. App'x 816, 819 (10th Cir. Mar. 26, 2020) (quoting 28 U.S.C. § 994(t)).

The Sentencing Commission has identified four reasons that may constitute grounds for compassionate release: (1) defendant's medical condition; (2) defendant's age; (3) defendant's family circumstances; and (4) as determined by the Director of the BOP, an "extraordinary and compelling reason other than, or in combination with," the first three categories.   United States Sentencing Guidelines Manual ("U.S.S.G.") § 1B1.13, cmt. n.1 (Nov. 1, 2018).   In December of 2018, the First Step Act amended Section 3582(c)(1)(A) to permit defendants (rather than only the BOP) to file motions for compassionate release.   The Sentencing Commission's policy statement, which was effective November 1, 2018, nonetheless remains the relevant policy statement in determining whether "extraordinary and compelling reasons" warrant defendant's release.   See Saldana, 807 F. App'x at 819 (applying policy statement effective November 1, 2018 to defense motion under Section 3582(c)(1)(A)); see also United States v. Pinson, No. 20-6050, 2020 WL 7053771, at *3 (10th Cir. Dec. 2, 2020) (while defendant argued below that policy statement no longer binds federal courts, Tenth Circuit continues to refer to it in deciding challenges related to

§ 3582(c)(1)).

Here, defendant seeks compassionate release based on his medical conditions.   The government concedes that a chronic medical condition that elevates an inmate's risk of becoming seriously ill if he contracts COVID-19 may constitute an extraordinary and compelling reason for release.   See Government's Response To Defendant's Motion For Compassionate Release (Doc. #2300) at 14–15.   The government argues that medical conditions such as obesity combined with pre-diabetes during the COVID-19 pandemic satisfy the criteria under subsection (A) of the Section 1B1.13 commentary, i.e. a chronic condition that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility" and "from which [he] is not expected to recover."   Id. at 15 (quoting U.S.S.G. § 1B1.13, cmt. n.1).   Here, subsection (A) does not apply because unless and until defendant contracts COVID-19, his medical conditions do not limit his ability to provide self-care within the prison environment. Subsections (B) and (C) also do not apply.[1]   Accordingly, for defendant to establish extraordinary and compelling reasons for release based on his medical conditions and the risk of contracting COVID-19, he must rely on the catchall provision of subsection (D).

Under subsection (D) of the Section 1B1.13 commentary, as determined by the Director of the BOP, release may be appropriate based on other "extraordinary and compelling reason[s]," by themselves or in combination with defendant's medical condition, age and family circumstances.

---

[1]         Subsection (B) does not apply because defendant is 42 years old.   See U.S.S.G. § 1B1.13, cmt. n.1(B) (defendant must be at least 65 years old to qualify for relief based on age). Subsection (C) does not apply because defendant seeks relief based on his own circumstances, not family circumstances.   See U.S.S.G. § 1B1.13, cmt. n.1(C) (relief based on death or incapacitation of caregiver of minor child or incapacitation of spouse where defendant would be only available caregiver).

-4-

U.S.S.G. § 1B1.13, cmt. n.1(D).   To determine whether defendant presents other extraordinary and compelling reasons for release, the BOP has identified several "nonexclusive factors" to consider: defendant's criminal and personal history, the nature of his offense, disciplinary infractions, length of sentence and amount of time served, current age and age at the time of offense and sentencing, release plans and whether release would "minimize the severity of the offense." Saldana, 807 F. App'x at 819 (quoting BOP Program Statement 5050.50 at 12 (2019)).   Where the BOP Program statement is a "permissible construction of the statute," it is entitled to "some deference."   Id. (quoting Reno v. Koray, 515 U.S. 50, 61 (1995)).

As explained above, the First Step Act permits defendants (rather than only the BOP) to file motions for compassionate release.   The Sentencing Commission, however, which has lacked a quorum since the First Step Act was enacted in December of 2018, has not amended the Section 1B1.13 commentary which includes the catchall provision for other extraordinary and compelling reasons "[a]s determined by the Director of the BOP."   U.S.S.G. § 1B1.13, cmt. n.1(D).   In an unpublished decision, the Tenth Circuit implicitly recognized that in addition to the BOP, courts now can make such a determination.   See Saldana, 807 F. App'x at 819–20.[2]   The Court likewise concludes that on a defense motion, it may—independently of the BOP—determine whether defendant has established "other" extraordinary and compelling reasons that warrant a

_____

[2]       In Saldana, defendant argued that in determining whether he had established other compelling reasons under the catchall provision of subsection (D), the district court should have considered (1) his post-conviction rehabilitation efforts and (2) post-sentencing case law that would have lowered his sentencing range.   See 807 F. App'x at 819–20.   In affirming the district court's decision to deny defendant's request for a reduced sentence under the catchall provision of subsection (D), the Tenth Circuit implicitly assumed that the district court, rather than the BOP exclusively (as the commentary suggests), can determine whether a defendant has established "other" extraordinary and compelling reasons under the catchall provision.   See id.

reduced sentence beyond those stated in subsections (A) to (C) of the Section 1B1.13 commentary. U.S.S.G. § 1B1.13, cmt. n.1(D); see United States v. Israel, No. 95-00314-CR, 2020 WL 4362258, at *4 (S.D. Fla. July 29, 2020) (overwhelming majority of courts conclude that after First Step Act, courts may independently determine whether "other" extraordinary and compelling reasons warrant release); see also 28 U.S.C. § 994(t) (Sentencing Commission shall describe what should be considered extraordinary and compelling reasons including criteria to apply and list of specific "examples"); cf. United States v. Gunn, 980 F.3d 1178, 1180 (7th Cir. 2020) (no "applicable" policy statement for inmate motions for compassionate release so district judges must consider only statutory criteria of "extraordinary and compelling reasons"); United States v. Brooker, 976 F.3d 228, 236 (2d Cir. 2020) (because Section 1B1.13 not "applicable" to compassionate release motions brought by defendants, Application Note 1(D) cannot constrain district court discretion to consider whether any reasons extraordinary and compelling).

In the context of compassionate release, "extraordinary" means "exceptional to a very marked extent." United States v. Baydoun, No. 16-20057, 2020 WL 4282189, at *2 (E.D. Mich. July 27, 2020) (quoting *Extraordinary*, Webster's Third International Dictionary, Unabridged (2020)). "Compelling" means "tending to convince . . . by forcefulness of evidence." Id. (quoting *Compelling*, Webster's Third International Dictionary, Unabridged (2020)). As noted above, BOP Program Statement 5050.50 identifies several "nonexclusive" factors for the Court to consider in determining whether "other" extraordinary and compelling reasons warrant a reduced sentence. See Saldana, 807 F. App'x at 819.

Here, the government concedes that defendant's medical records confirm that he suffers from health conditions that establish extraordinary and compelling reasons for consideration of

-6-

compassionate release.   See Government's Response To Defendant's Motion For Compassionate Release (Doc. #2300) at 16.   After considering the factors in BOP Program Statement 5050.50, the Court finds that based on defendant's obesity, pre-diabetes and the risk of contracting COVID-19 in prison, he has shown exceptional and compelling reasons for a reduced sentence.

Next, the Court must determine whether a sentence reduction is warranted, and the extent of any reduction, under the applicable factors set forth in 18 U.S.C. § 3553(a).   See 18 U.S.C. § 3582(c)(1)(A).   The Court considers the nature and circumstances of the offense, defendant's personal history and characteristics, the purposes of sentencing including the need to protect the public from further crimes of the defendant, any threat to public safety and the need to avoid unwanted sentence disparities among defendants with similar records who are convicted of similar conduct.   See 18 U.S.C. § 3553(a).

Defendant notes that if sentenced today, he would not be subject to a sentence enhancement under 21 U.S.C. § 851 and that his guideline range would be 100 to 125 months, which is significantly less than his current sentence of 180 months.   The government argues that in determining whether defendant should be released, the Court should not consider any change in law since defendant's original sentencing.   See Government's Response To Defendant's Motion For Compassionate Release (Doc. #2300) at 21 (citing Saldana, supra).   In Saldana, the Tenth Circuit held that the district court lacked jurisdiction to reduce defendant's sentence based on post-sentencing developments in case law because the Section 1B1.13 commentary and BOP Program Statement 5050.50 did not identify a change in law as an "extraordinary and compelling reason" for relief.   807 F. App'x at 820.   As noted above, the government here concedes that defendant's medical conditions establish extraordinary and compelling reasons for relief.   Nothing in Saldana

suggests that after a district court has determined that a defendant has shown an extraordinary and compelling reason for a reduced sentence, it cannot consider post-sentencing developments in the law as part of the balancing of the sentencing factors under 18 U.S.C. § 3553(a).  See United States v. Walker, No. 06-CR-00320-LTB, 2020 WL 5100250, at *4 (D. Colo. Aug. 21, 2020) (post-sentencing developments or changes in law do not constitute extraordinary and compelling reasons to support compassionate release relief, but such changes in sentencing exposure of defendant seeking such relief relates to weighing sentencing factors in 18 U.S.C. § 3553(a)) (citing Saldana, supra).   As explained below, even without considering defendant's hypothetical sentencing range of 100 to 125 months under the current Guidelines, the Court exercises its discretion to reduce his sentence.

The government argues that after balancing the Section 3553(a) factors, the Court should deny release.  Defendant committed a significant drug trafficking offense and has a history of drug offenses.  In 2007, defendant also assaulted an arresting officer.  At the same time, he already has served approximately 100 months in prison (the equivalent of 118 months with good time credit or approximately 65 percent of his original sentence).   When combined with a special term of supervised release that includes 54 additional months of home confinement (to approximate defendant's original release date), a reduced sentence under Section 3582(c)(1)(A) is consistent with the seriousness of the offense, the need for deterrence and the need to protect the public.  In addition, although defendant possessed firearms in the past, he apparently has no history of violence in the past 14 years.  Defendant had a disciplinary incident in 2019 for possession of a cellphone, but he has not received any infractions for at least the past six months. He completed his GED while in prison and has participated in several courses and programs,

including a commercial driver's license program and a number of financial education classes.   He has completed a drug education program, but he has been unable to complete the Residential Drug Abuse Program because of programming delays related to COVID-19.

In light of defendant's current medical conditions, the COVID-19 pandemic and the applicable factors under 18 U.S.C. § 3553(a), the Court finds that a sentence of time served with a special term of supervised release including home confinement of 54 months is sufficient, but not greater than necessary, to reflect the seriousness of the offense, afford adequate deterrence, protect the public and provide defendant needed treatment in the most effective manner.   See 18 U.S.C. § 3553(a)(2)(A)–(D).   Accordingly, the Court reduces defendant's sentence of 180 months in prison to time served with a special term of supervised release to start immediately on his release and to expire on August 24, 2025.   During the special term of supervised release, defendant shall remain on home detention with video conference monitoring by the United States Probation Office.   Defendant shall remain subject to his standard term of supervised release of ten years, which will begin immediately after the expiration of the special term of supervised release.

**IT IS THEREFORE ORDERED** that defendant's Motion For Sentence Reduction Under 18 U.S.C. § 3582(c)(1)(A) (Doc. #2290) filed November 20, 2020 is **SUSTAINED**.   **The Court reduces defendant's sentence of 180 months in prison to TIME SERVED.   Defendant shall immediately begin a special term of supervised release which will expire on August 24, 2025. All terms and conditions that apply to defendant's standard term of supervised release (as set forth in the Judgment In A Criminal Case (Doc. #1451) filed April 2, 2014 at 3) shall apply to defendant's special term of supervised release.   In addition, during the special term of supervised release, defendant shall be on home confinement and shall possess or have**

access to a telephone, smart phone or compatible device that will allow video conference monitoring by the United States Probation Office.   During the first 14 days of his special term of supervised release, defendant shall self-quarantine.   After the special term of supervised release expires on August 24, 2025, defendant will begin his standard term of supervised release of ten years.

Except as modified above, all other terms and conditions of the **Judgment In A Criminal Case** (Doc. #1451) filed April 2, 2014 shall remain in effect.

Dated this 17th day of February, 2020 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge